## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In Re:

Midwest Properties of Shawano, LLC.

           Debtor,

Chapter 11

Case File No.:   11-10407 (KJC)

---

## MOTIONS OF MIDWEST PROPERTIES FOR TURNOVER
## AND ACCOUNTING BY FCCU AND ITS RECEIVER AND FOR ORDER
## AGAINST FCCU AND RECEIVER FOR WASTE TO PROPERTIES

---

Midwest Properties of Shawano, LLC. ("MWP" or "Debtor"), by and through its undersigned counsel, moves this Court for an Order on an emergency basis requiring FCCU and its receiver to Turnover the Properties and produce Accountings and further Ordering that FCCU and its receiver are liable for all waste on the Properties. Debtor sets forth the following in support:

### PROCEDURAL AND FACTUAL BACKGROUND

1.      This Court has jurisdiction over this motion or this motion is authorized under 28 U.S.C. 157 and 1334, Federal Rules of Bankruptcy 7001 and 9014. The petition commencing the Debtor's Chapter 11 case was filed on February 8, 2011 in United States Bankruptcy Court for the District of Delaware.

2.      MWP is operating its business and managing its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

3.      To enable MWP to minimize any adverse effects of the commencement of its chapter 11 case on its business operations, MWP has requested various types of relief in certain applications and motions. Among the relief sought is a Motion for Turnover of Property and Accounting pursuant to 11 U.S.C. § 543 and Request for Emergency Hearing ("Turnover

Motion"). These motions arise under 11 U.S.C. §§ 521, 541, 542, 543 and 704 and Federal Rules of Bankruptcy Procedure 4002 and 7001. This motion is filed under Federal Rules of Bankruptcy Procedure 9014. The debtor-in-possession requests turnover of property of the estate.

4.      The debtor-in-possession has requested turnover of property of the estate, specifically including, but not limited to, all cash on hand, rents, leases, contracts entered into and an accounting for all actions by receiver from September 2, 2008 to the date of turnover. The property under the control of the receiver includes apartment buildings located at 1024 East 5th Street and 463 Humphrey Circle in the City of Shawano, Wisconsin. Thus far, Debtor-in-possession has received no indication that the receiver intends to comply with the request. In fact, it appears that FCCU and its counsel intend to simply ignore Debtor-in-possession's requests and the law.

5.      This Court has subject matter jurisdiction over this Turnover Motion pursuant to 28 U.S.C. § 1334. The Turnover Motion is part of the core proceedings pursuant to 28 U.S.C. § 157(b)(2)(E). The Court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1). Venue of these proceedings and both Motions is proper in the District of Delaware.

6.      On July 30, 2004, Debtor purchased two apartment buildings in Shawano, Wisconsin located at 463 Humphrey Circle and 1024 East Fifth Street (hereinafter referred to as "the Properties"). The properties were purchased on a Land Contract from Robert and Shannon Broder (hereinafter "the Broders") for a purchase price of $575,000. MWP paid the Broders a down payment of $100,000 which was the approximate amount of their equity in the properties. The Broders had a mortgage on the properties with Fox Communities Credit Union (hereinafter

"FCCU") out of Appleton, Wisconsin. The property was purchased subject to the superior mortgage and with the consent of FCCU.

7.     Pursuant to the Land Contract, the remaining balance of the purchase price of $475,000 was to be paid in monthly installments of $5,000 at the rate of 6.25 percent per annum. For the first year, payments were made directly to FCCU. Thereafter, the Broders, working as agents for Shawano Mayor Lorna Marquardt, convinced MWP to make the payments directly to them due to a bank change. MWP was led to believe that the mortgage had been sold and that the terms of that mortgage required that the payments be made directly by the Broders. As a result, Debtor was required to pay the Broders and they in turn would pay the mortgage company. At the time of the closing, the down payment on the buildings was the Broders' equity. The balance on the Land Contract and the balance on the mortgage were the same. In good trust, for nearly the next three years, payments of $5,000 per month were made directly to the Broders.

8.     In March 2008, MWP finally received notice from Business Lending Group, the loan servicing company for FCCU, that the mortgage on the properties was seriously delinquent. In over three years, this was the first time that MWP was notified about any problem with the mortgage. Given the fact that FCCU consented to the sale, MWP should have been informed if at any time FCCU was not receiving the $5,000 contractual monthly payments.

9.     MWP attempted to get the matter resolved with FCCU; they were directed to deal with Business Lending Group, FCCU's loan servicing company. In early 2008, MWP representatives went to Business Lending Group's office in Appleton to attempt to explain what had happened and try to resolve matters. They met with Mark and Steve Kools at Business Lending Group for less than five minutes before they were ordered to leave and told that FCCU

was not interested in having anything to do with a "CULT" organization. Thereafter, Business Lending Group refused to work with MWP and demanded that they be paid in full within a few days or they were going to start foreclosure.

10.      On April 17, 2008, FCCU through their attorney David Van Lieshout filed for foreclosure on the property. Thereafter, by Order dated September 5, 2008 in Shawano County Court File No. 08-CV-141, Attorney for FCCU, David Van Lieshout, was appointed as receiver of the aforementioned properties. That Order states in part that said receiver "shall collect all rents that may become due and owing subsequent to September 2, 2008 and pay any expenses in connection with the operation of the properties".

11.      Even though it was not provided for in the Order, Van Lieshout called the police to assist and hired a local locksmith to change all the locks on the buildings so MWP's representatives would have no physical access to the properties. Then the receiver, again without any court approval, hired Doug Knope, the Shawano Fire Commissioner to start needlessly replacing the HVAC units in all the apartments with new units. The receiver asserted that such replacements would improve the value of the Properties.

12.      For the past two years, attorney and receiver Van Lieshout and/or his associate Krueger have collected all the rents from the buildings. FCCU and its receiver have never produced any accounting of receivership activities from September 2, 2008 to the present, although they are legally obligated to provide such accounting to the Court and this debtor. Based upon the income generated during MWP's operation of the properties, Van Lieshout should have collected nearly $210,000 in rents since being appointed receiver in September 2008. To this day, the receiver and FCCU have refused to give the Court or Debtor any sort of

accounting of the payments that have been made on the loan and an accounting of the funds that they have received since the properties went into receivership two and a half years ago.

13.     According to the 2009 Shawano County tax statements, the combined estimated market value of the apartment buildings is $697,700.  For the last two and a half years, FCCU has been allowed to commit waste with impunity.  Two years of real estate taxes have been left unpaid to the extent that they are becoming seriously delinquent.  Moreover, the buildings are not being maintained or properly marketed.  More recently, FCCU claimed that the buildings had depreciated in value.  However, FCCU failed to mention that as part of their receivership, they have the duty to maintain the Properties.  None of these conditions existed at the time that the receivership was implemented.  Therefore, their evidence of depreciated Properties' value is also admission of their waste.  They have had full and complete control of all aspects of the Properties, including all the monies.  Paying down the debt secured by the Properties, paying the Properties' legitimate expenses, and maintaining the Properties in good condition should have been FCCU and its receiver's primary objectives.

14.     Since MWP's bankruptcy filing, the receiver has taken no action to comply with the terms of 11 U.S.C. § 543 to return the property to the debtor-in-possession.  FCCU's receivership is not for the benefit of MWP's creditors; therefore, the receivership property must be returned to the debtor-in-possession to be included as part of MWP's reorganization plan.

15.     As basis for the receivership Order, Receiver, David Van Lieshout and his associate, Steven Krueger repeatedly criticized Midwest Properties of Shawano for allegedly committing waste because they were late in paying taxes yet there is currently $32,458.77 owed in outstanding taxes for 2007 - 2008.  Contrary to the requirements of the Court Order appointing receiver, Van Lieshout has not paid the 2007 and 2008 real estate taxes on the buildings until this

day.  **See Exhibit A attached hereto and incorporated by reference.**  Upon information and belief, the tax payment due and payable on January 31, 2011 has not been paid and has therefore caused the property taxes on both buildings to become delinquent for 2011.

16.     The Receiver was appointed to "preserve and protect the Apartments."  When the receiver first took possession of the Properties, he argued that "failure to replace the furnaces would almost certainly result in the decreased value of the properties and a reduction in the profits received from rent."  As a result, the furnaces were replaced; yet the receiver now argues that the fair market value of the Properties has plummeted remarkably in the past two and a half years. FCCU more recently argued that the combined value of the Properties is now only $384,900 even though the combined tax assessed value is $697,700.

17.     With full knowledge of FCCU, the receiver has been obligated to repair and maintain the Properties in good marketable condition but has by FCCU's own admissions failed to do so.  With full knowledge of FCCU, the receiver has been collecting rents every month since October 1, 2008.  Further, the receiver has had control of the rent rolls, full authority to market, advertise, and lease the rental units in order to maintain an appropriate occupancy level. It also appears that the Properties are not being properly advertised for rent or otherwise marketed to keep rent rolls at the appropriate levels. Therefore, the receiver has also committed waste by compromising the buildings' cash flow as well.

18.     Moreover, the receiver has the duty and obligation to maintain the Properties in good condition, including handling matters such as repairing the roof, monitoring water leaks, discovering the source of the problem and fixing it before it becomes a threat to the building. Yet the receiver has intentionally or recklessly failed to perform any of these listed obligations.

19.     Upon information and belief, for the past two and a half years the receiver has recklessly or intentionally not been making any mortgage payments or maintaining the apartment buildings. As a result of the failure to make mortgage payments, FCCU has been charging outrageous interest, late fees, and penalties against the loan secured by the Properties. Such actions of the receiver, with the knowledge of FCCU, have created substantial material and financial waste to the subject properties.

## RELIEF REQUESTED

20.     Ordering FCCU and the receiver to turn over to the debtor-in-possession the Properties located at 463 Humphrey Circle and 1024 East Fifth Street in Shawano pursuant to 11 U.S.C. § 543 specifically including, but not limited to, the real property, keys to access same, all cash on hand, rents, leases, and contracts entered into by receiver.

21.     Ordering that FCCU and its receiver produce a true and accurate accounting of all receivership activities from September 2, 2008 to the present, including but not limited to all cash on hand, rents received and all expenditures and loan payments made with such receipts.

22.     Ordering that the creditor Fox Communities Credit Union file a written report showing an accounting of all debits and credits under the loan against the Properties from July 30, 2004 through the present.

23.     Ordering that the Receiver be found guilty of committing waste, including tortious waste, to the receivership property.

24.     Further ordering that FCCU and the receiver shall be jointly and severally liable for all waste committed to the Properties since September 2, 2008 and that the question of the

extent and amount of Defendants' damages shall be determined and explored thoroughly in a separate evidentiary hearing as part of this case.

## ARGUMENT

I. **THE COURT MUST ORDER THE RECEIVER TO TURN OVER THE PROPERTIES UNDER RECEIVERSHIP TO DEBTOR-IN-POSSESSION UNDER 11 U.S.C. § 543 WHERE THE RECEIVER HAS FAILED TO VOLUNTARILY COMPLY WITH THE BANKRUPCY CODE**.

25.     Because the custodian-receiver has failed to turn over the property, the debtor-in-possession has been unable to account for and administer all assets of the bankruptcy estate as required by 11 U.S.C. § 704.

26.     Applicant, as debtor-in-possession herein, is entitled by virtue of 11 U.S.C. § 543 to the immediate possession of said Properties, including, but not limited to, all cash on hand, rents, leases, contracts entered into and an accounting for all actions by receiver from September 2, 2008 to the date of turnover.

27.     The United States Supreme Court has held that the reorganization bankruptcy estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization. U.S. v. Whiting Pools, Inc., 462 U.S. 198, 209 103 S.Ct. 2309, 2315 (1983). Pursuant to 11 U.S.C. § 543, immediately upon obtaining knowledge of the commencement of the bankruptcy case, a custodian **must** deliver to the debtor-in-possession any property of the debtor that is in the custodian's possession, custody, or control and must file an accounting. 11 U.S.C. § 543. Bankruptcy Code Section 541(a)(3) specifically provides that property of the estate includes any interest in property that the debtor recovers under section 543 of the Bankruptcy Code.  This statute intends that property being managed by a receiver will be returned to the representative of the estate upon the commencement of a bankruptcy case by the owner.  In re Northgate Terrace Apartments, Ltd., 117 B.R. 328, 333 (Bankr. S.D. OH 1990);

28.     The turnover requirements are mandatory. <u>In re Constable Plaza Assocs.</u>, 125 B.R. 98 (Bankr. S.D.N.Y. 1991). (holding that custodian has absolute duty to refrain from any further action in administration of the debtor's property and must immediately deliver the property to the debtor upon obtaining knowledge of the bankruptcy filing); <u>In re Property Management & Investments, Inc.</u>, 17 B.R. 728, 731 (Bankr. M.D. Fla. 1982) ("[T]he duty of the custodian to deliver and turn over properties in his possession is absolute[.] ... "). Under the bankruptcy code, a receiver is a custodian "that is appointed or authorized to take charge of property of the debtor . . . for the benefit of the debtor's creditors".  11 U.S.C. § 101(11)(C). The requirement to turn over property under 11 U.S.C. § 543 is triggered when (1) the custodian has possession, custody, or control of the property; and (2) such property is the property of the debtor (as in this case). <u>Sovereign Bank v. Schwab</u>, 414 F.3d 450, 454 (3rd Cir. 2005).

29.     Furthermore, the United States Supreme Court held in relevant part as follows:

> "Until the business can be reorganized pursuant to a plan under 11 U.S.C. §§ 1121-1129, the trustee or debtor-in-possession is authorized to manage the property of the estate and to continue the operation of the business.  See § 1108. . . . Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap" Ibid.  The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate. . . Thus to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate.
> This authorization extends even to property of the estate in which a creditor has a secured interest. 11 U.S.C. § 363(b)"  <u>U.S. v. Whiting Pools, Inc.</u>, 462 U.S. at 203, 103 S.Ct. at 2312-2313.

In fact, in that case, the Supreme Court held that a bankruptcy court could order the Internal Revenue Service to turn over property which it had seized to satisfy tax lien prior to filing a reorganization petition pursuant to 11 U.S.C. § 542(a) and 26 U.S.C. § 6321. <u>Whiting Pools</u>, 462 U.S. at 209.

30.     A state court appointed receiver is a "custodian" within the meaning of 11 U.S.C. § 101(11).  In re Lizeric Realty Corp., 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995). Therefore, once a bankruptcy petition is filed, a non-bankruptcy custodian's receivership terminates and the custodian must, as a general proposition, deliver the debtor's property to the trustee or the debtor, and must account for the properties which were in the custodian's possession, custody, or control as a custodian.  See In re WPAS, Inc., 6 B.R. 40, 43 (Bankr. M.D. Fla. 1980).

31.     FCCU has not complied with 11 U.S.C. § 543(d)(1).   Rather, despite Debtor's requests, FCCU, its receiver, and attorney have failed to comply with the statutory mandate of turning over the property.

32.     Because the custodian has no interest in the property, no adequate protection is required to be provided to the custodian. In re Property Management, 17 B.R. at 731. ("There is no question that a custodian is not entitled to adequate protection as a condition to turnover ..."; see also, Dunne Trucking Co. v. Internal Revenue Service (In re Dunne Trucking Co.) 32 B.R. 182, 189 (Bankr. N.D. Iowa 1983) ("Section 543 is not subject to the ... adequate protection requirements of §363(e), since a custodian ... presumably has no interest in the property being held for the debtor.").

33.     Pursuant to the analysis of the bankruptcy code and case law, the Properties in the possession of the state court receiver constitutes property of the estate, which must be turned over to the debtor in possession under 11 U.S.C. § 543(b)(1).  Matter of Willows of Coventry, Ltd Partnership, 154 B.R. 959, 967 (Bankr. N.D. IN 1993).   Based upon the foregoing, the receiver has an absolute duty to turn over the Properties, including but not limited to, all cash on hand, rents, leases, contracts entered into by receiver. In addition, MWP is entitled to an

accounting of all receivership activity. Debtors have met their burden of proving that the property in question is property of the estate.

## II. DEBTOR HAS AN ABSOLUTE AND ONGOING OWNERSHIP INTEREST IN THE PROPERTIES AND THEREFORE HAS AN ABSOLUTE RIGHT TO POSSESSION AND TURNOVER OF THE PROPERTIES.

34. Debtor has an absolute right to possession and turnover of the Properties to the Debtor-in-possession. In bankruptcy, the determination of property rights in the assets of a bankruptcy estate is a matter of state law. <u>Butner v. United States</u>, 440 U.S. 48, 54, 99 S. Ct. 914, 917-18, 59 L. Ed. 2d 136 (1979). It is well-settled that Wisconsin is a lien theory state. <u>Bank of Commerce v. Waukesha County</u>, 89 Wis.2d 715, 723, 279 N.W.2d 237, 241 (Wis. 1979). Under Wisconsin law, a mortgagee (i.e. FCCU) has only a lien on the mortgaged property even after a judgment of foreclosure is entered. Neither equitable nor legal title passes to a lender unless and until a foreclosure sale is held. <u>Matter of Clark</u>, 738 F.2d 869, 871 (7th Cir. 1984). A mortgagor loses interest in the property only after the foreclosure sale. <u>In re Lynch</u>, 12 B.R. 533, 534-35 (Bankr.W.D.Wis.1981). A judgment of foreclosure "does little more than determine that the mortgagor is in default, the amount of principal and interest unpaid, the amounts due to plaintiff mortgagee for taxes, etc. The judgment does not destroy the lien of the mortgage but rather judicially determines the amount thereof." <u>Marshall & Ilsley Bank v. Greene</u>, 227 Wis. 155, 164, 278 N.W. 425, 429 (Wis. 1938). Thus, despite a judgment of foreclosure, the property remains part of the debtor's bankruptcy estate under 11 U.S.C. § 541. <u>Matter of Clark</u>, 738 F.2d at 871. It follows as a practical matter that if this were not true, a debtor's bankruptcy filing would not have any power to stay a foreclosure sale on property if a judgment of foreclosure had been issued by a court.

35.     Just as property rights in bankruptcy are determined by state law, the same is true with respect to the interests of a mortgagee in rents earned by mortgaged property.  Butner, 440 U.S. at 55, 99 S. Ct. at 918.  It is also well-settled that under Wisconsin law, during the pendency of a foreclosure action, where the mortgagor retains title, the mortgagee does not ipso facto by virtue of a default acquire the right to possession of the property or the rents and profits that may accrue.  Wuorinen v. City Fed. S & L Ass'n, 52 Wis. 2d 722, 727, 191 N.W.2d 27, 29-30 (Wis. 1971); Matter of Madison Hotel Associates, 749 F.2d 410, 422 (7th Cir. 1984).  Even when a receiver is appointed in a state foreclosure action, the collected rents and income of the mortgaged land do not belong to the mortgagee or to the receiver, but they are to be conserved and applied on the mortgage debt for the mortgagor's benefit.  Zimmermann v. Walgreen Co. 215 Wis. 491, 496, 255 N.W. 534, 536 (Wis. 1934).  Such rents constitute cash collateral and are property of the Debtor's estate within the purview of 11 U.S.C. § 363.

36.     When Broders entered into a land contract with Midwest Properties (MWP), Debtor MWP as the vendee, by the process of equitable conversion, became the owner of the land in equity.  Mutual Federal S&L Ass'n v. Wisconsin Wire Works et. al., 205 N.W.2d 762, 58 Wis.2d 99, 104 (Wis. 1973); Kallenbach v. Lake Publications, Inc., 30 Wis.2d 647, 142 N.W.2d 212 (Wis. 1966).  In other words, the full ownership of the properties, both equitable and legal, vested in MWP.  Mutual Federal S&L Ass'n, 58 Wis.2d at 104.  Debtor's ownership interest was in no way diminished by the executed Consent and Agreement regarding release of Senior Mortgages, which agreement specifically states that the Land Contract has the controlling effect between the two documents. In fact, Debtor MWP's ownership interest was actually strengthened by the Consent Agreement in that it obtains FCCU's acknowledgement of Midwest Properties' interest in the properties according to the prevailing terms of the Land Contract.

37.     It thus follows that as long as MWP complies with section 1124(2), curing the default of FCCU's accelerated loan and reinstating the original terms of that loan, FCCU's claim is not impaired.  Matter of Madison Hotel Associates, 749 F.2d 410, 422 (7th Cir. 1984).  This case makes clear the distinction between Delaware and Wisconsin law, which hold entirely opposite positions.  The point to be gleaned from the relevant case law is that a creditor, holding a final judgment of foreclosure, is not impaired under 11 U.S.C. § 1124(2) if the debtor's plan of reorganization cures the default of the accelerated loan before the foreclosure sale actually occurs on or before the judgment merges into the mortgage under state law, thereby transferring title to the mortgagee.

38.     Additionally, Debtor MWP has a contractual right to reinstate the loan with FCCU pursuant to the terms of the Consent Agreement and Land Contract.

    a.  Paragraph 20 of Land Contract titled Purchaser's Right to Reinstate after Acceleration states as follows:  "If Purchaser defaults and the loan is accelerated, then Purchaser shall have the right of reinstatement as allowed under the laws of the State of Wisconsin, provided that Purchaser pays Lender all sums which then would be due under this agreement as if no acceleration had occurred.  Upon reinstatement by Purchaser, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred."  See **EXHIBIT B** attached hereto and incorporated herein by reference.

    b.  Paragraph 5 of Consent and Agreement regarding release of Senior Mortgages titled Consent by Bank states as follows:  The **Bank hereby consents and agrees** to the terms and conditions of the Land Contract, and agrees that the conveyance of the Real Estate to Purchaser shall not constitute a default in, or acceleration of any remedy under the Mortgages or under any other agreement, covenant, term, condition, or commitment between the Bank and Vendor.  See **EXHIBIT C** attached hereto and incorporated herein by reference.

    c.  Paragraph 6 of Consent and Agreement regarding release of Senior Mortgages titled Miscellaneous states in relevant part as follows:  ". . . This Agreement shall, to the greatest extent reasonably possible, be read together and harmonized with the other documents and agreements incorporated herein by reference; provided, however, that in the event of a direct conflict between their terms and conditions, respectively, the **Land Contract shall be given controlling effect**.  See **Exhibit C** attached hereto.

Based on the case law, Debtor MWP has legal and equitable title to the Properties, and therefore, FCCU and its receiver must turn the Properties over to Debtor-in-possession immediately in compliance with 11 U.S.C. §§ 541 and 543.


## III. RECEIVER-ATTORNEY VAN LIESHOUT HAS COMMITTED INTENTIONAL WASTE AGAINST THE RECEIVERSHIP PROPERTY AND DEFENDANTS ARE ENTITLED TO DAMAGES.

39.     A receiver is an officer of the court entrusted with administration of the receivership property who inherits the owner's rights to the property. Booth v. Clark, 58 U.S. 322, 331, 15 L. Ed. 164 (1854); Federal Savings & Loan Ins. Corp. v. PSL Realty Co., 630 F.2d 515, 521 (7th Cir.1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). Receivership is an equitable remedy, and the district court may, in its discretion, determine who shall be charged with the costs of the receivership.  Gaskill v. Gordon, 27 F.3d 248, 251 (7th Cir. 1994); Pittsburgh Equitable Meter Co. v. Paul C. Loeber & Co., 160 F.2d 721 (7th Cir.1947).

40.     Every receiver may be sued in respect of any act or transaction where the cause of action arose from the conduct of the receiver himself or his agents in carrying on the business connected with such property, without the previous leave of the court in which said receiver or manager was appointed. McNulta v. Lochridge, 141 U.S. 327, 331, 12 S.Ct. 11 (1891). A receiver's primary responsibility, when appointed incident to a foreclosure action, is to preserve and protect the value of the property entrusted to the receiver . . ., that is, to "prevent waste." Dick & Reuteman Co. v. Jem Realty Co., 225 Wis. 428, 274 N.W. 416 (Wis. 1937).  In Dick & Reuteman, the Wisconsin Supreme Court, referring to the statute permitting the appointment of a receiver where the property or its rents and profits are in danger of being lost or materially impaired, stated that the appointment of a receiver in the first instance could only be justified for

the purpose of preventing waste, and that it is well established that a failure to pay interest or taxes constitutes waste, because it results either in an increase of the debt or in an impairment of the security by subjecting it to liens superior to that of the mortgagee. Dick & Reuteman Co., 225 Wis. 428.

41.     The Minnesota Supreme Court held that it was waste for the mortgagor, in possession of an apartment building after the foreclosure sale and during the period of redemption, not to use current rents to the extent reasonably needed to keep the property tenantable. Gardner v. W. M. Prindle & Co. 185 Minn 147, 240 NW 351 (Minn. 1932). The court stated that if the property was not kept reasonably attractive to tenants, preventable vacancies would surely result to the damage of all concerned; that a vacancy resulting from disrepair causes, in addition to immediate diminution in rent, a damage to the character and reputation of an apartment building, such damage possibly being much more serious than the loss of rent; and that it was waste to permit it to be neglected and fall into disrepair so as to deteriorate in value and result in the loss of tenants. Gardner v. W. M. Prindle & Co. 185 Minn 147, 240 NW 351 (Minn. 1932).

42.     A receiver has committed waste and is responsible for those actions where the receiver has through its unreasonable conduct or irresponsibility caused physical damage to receivership property and thereby substantially diminished the value of the property in which others have an interest. Chetek State Bank v Barberg, 170 Wis 2d 516, 489 NW2d 385 (Wis. Ct. App. 1992). In prior case pleadings, FCCU produced substantial documentation demonstrating examples of waste committed by the receiver. Building roof leaks were never repaired; as a result, there is water damage in the building and mold. Some of the apartments are missing refrigerators, which apparently must have been stolen but the receiver did not bother to replace

them. Presumably, the receiver is not attempting to rent out the apartment units with missing refrigerators and/or water damage. Therefore, the receiver has also committed waste by compromising the buildings' cash flow as well. The receiver has been collecting rents for two and a half years, yet upon information and belief, the receiver must not be making mortgage payments or maintaining the apartment buildings.

43. As a result of the receiver's actions, damage to an unknown extent has occurred to the receivership property. With full knowledge of FCCU, the receiver has had control of the rent rolls, full authority to market, advertise, and lease the rental units in order to maintain an appropriate occupancy level. The receiver has the duty and obligation to maintain the Properties in good condition, including handling matters such as repairing the roof, monitoring water leaks, discovering the source of the problem and fixing it before it becomes a threat to the building Following are a number of incidences of waste known to Defendants:

- ➢ The real estate taxes for 2007 and 2008 still have not been paid.
- ➢ The first payment of real estate taxes for 2010 due and payable in 2011 has not yet been paid. As a result the 2010 taxes due and payable in 2011 are now delinquent and due and payable in full at the present time.
- ➢ A leak or leaks in the roof of one or both buildings were left unattended until water damaged the building interior.
- ➢ The roof leak(s) are still not fixed as FCCU claims it will cost $40,000 to replace the building roofs.
- ➢ Due to water damage in the building, some interior areas apparently now need mold remediation work. The cost of such remediation work is unknown but will likely not be insignificant.
- ➢ Upon information and belief, the receiver failed to market the properties and maintain a standard level of occupancy.
- ➢ Based upon FCCU's claim amount, it appears that the receiver may have failed to pay down the FCCU loan with the rent proceeds.
- ➢ FCCU claims several units are missing refrigerators. This means that the receiver has allowed them to be stolen under his watch.

44.     Such actions by an attorney receiver and officer of the court are reprehensible and must not go unchecked or unpunished. Debtor is entitled to recover their damages incurred as a result of the receiver's tortious waste.

## CONCLUSION

WHEREFORE, Debtor requests that the court Order the  receiver immediately turn over to Debtor the receivership property, including but not limited to all realty and personalty it has taken control of, the balance of any funds collected and remaining in his possession, an accounting of what funds were collected since September 2008 and how they were spent, copies of all inventory sheets created at the time the receiver took over the property, copies of any bank statements for accounts established by the receiver, and all keys for all locks installed on the property by the receiver.  Debtor further requests the Court to issue an Order finding that the receiver has committed waste and determining that Debtor is entitled to damages that have occurred as a result of the receiver's waste.  Debtor requests that Receiver be ordered to compensate Debtor to restore the property to its pre-receivership condition.


Dated:  March 20, 2011                          LARAINE A. RYAN, ESQ.

                                                      /s/ Laraine A. Ryan
                                                Laraine A. Ryan, ID No. 3249
                                                1601 Milltown Rd, Suite 8, Lindell Square
                                                Post Office Box 5733
                                                Wilmington, DE  19808-0733
                                                Telephone:  (302) 993-9010
                                                Facsimile:  (302) 397-2347
                                                *Attorney for Debtor*

# EXHIBIT A

SHAWANO COUNTY TREASURER'S OFFICE                    (715) 526-9130
KAY SCHROEDER, TREASURER                        FAX # (715) 524-5157
311 NORTH MAIN STREET
SHAWANO WI  54166-2198


                                                    8/26/10


        SHAWANO LLC MIDWEST PROPERTIES OF
        PO BOX 11768
        GREEN BAY WI   54307


| DESCRIPTION | TAX YEAR | REAL ESTATE AMOUNT | SPECIAL AMOUNT | INT/PEN | TOTAL |
|---|---|---|---|---|---|
| 281-40300-1680 | | | | | |
| CITY OF SHAWANO ARLINGTON | 2007 | 6,336.47 | | 1964.31 | 8,300.78 |
| ADDITION LOTS 15-16 & 17 | 2008 | 6,702.13 | | 1273.40 | 7,975.53 |
| BLK 10 | | | | | |
| | | | | | |
| 281-40300-1690 | | | | | |
| CITY OF SHAWANO ARLINGTON | 2007 | 6,300.04 | | 1953.01 | 8,253.05 |
| ADDITION LOTS 18-19 & 20 | 2008 | 6,663.37 | | 1266.04 | 7,929.41 |
| BLK 10 | | | | | |
| TOTALS | | 26,002.01 | | 6,456.76 | 32,458.77 |


THIS IS A STATEMENT OF THE AMOUNT OF TAXES DUE
ON PROPERTY IN SHAWANO COUNTY AS DESCRIBED ABOVE
WITH INTEREST AND PENALTY CALCULATED THRU -- 08/2010
ON THE FIRST OF EACH MONTH THEREAFTER, ADD    260.02

IF YOU HAVE ANY QUESTIONS REGARDING THIS MATTER,
PLEASE CONTACT THIS OFFICE AT 715-526-9130.

# EXHIBIT B

# LAND CONTRACT

THIS DAY this agreement is entered into by and between Robert and Shannon Broder, hereinafter referred to as "SELLER", whether one or more, and Midwest Properties of Shawano, LLC, hereinafter referred to as "PURCHASER", whether one or more, on the terms and conditions and for the purposes hereinafter set forth:

## 1.
## SALE OF PROPERTY

For and in consideration of TEN DOLLARS ($10.00) and other good and valuable considerations the receipt and sufficiency of which is hereby acknowledged, Seller does hereby agree to convey, sell, assign, transfer and set over unto Purchaser, the following property situated in Shawano County, State of Wisconsin, said property being described as follows: *(Type description or attach description as exhibit "A")*

## Exhibit A

Together with all rights of ownership associated with the property, including, but not limited to, all easements and rights benefiting the premises, whether or not such easements and rights are of record, and all tenements, hereditaments, improvements and appurtenances, including all lighting fixtures, plumbing fixtures, shades, venetian blinds, curtain rods, storm windows, storm doors, screens, awnings, if any, and appliances now on the premises.

SUBJECT TO all recorded easements, rights-of-way, conditions, encumbrances and limitations and to all applicable building and use restrictions, zoning laws and ordinances, if any, affecting the property.

## 2.
## PURCHASE PRICE AND TERMS

The purchase price of the property shall be $575,000.00.  The purchaser does hereby agree to pay to the order of the Seller the sum of One Hundred Thousand Dollars ($100,000.00) upon execution of this agreement, with the balance of Four Hundred Seventy Five Thousand Dollars ($475,000.00) being due and payable as follows:

Balance payable, together with interest on the whole sum that shall be from time to time unpaid at the rate of 6.25 per cent, per annum, payable in the amount of $5,000.00 dollars per month beginning

on the 1st day of September, 2004 and continuing on the same day of each month thereafter until fully paid.

If interest is charged, interest shall be computed monthly and deducted from payment and the balance of payment shall be applied on principal.

### 3.
### TIME OF THE ESSENCE

Time is of the essence in the performance of each and every term and provision in this agreement by Purchaser.

### 4.
### SECURITY

This contract shall stand as security of the payment of the obligations of Purchaser.

### 5.
### MAINTENANCE OF IMPROVEMENTS

All improvements on the property, including, but not limited to, buildings, trees or other improvements now on the premises, or hereafter made or placed thereon, shall be a part of the security for the performance of this contract and shall not be removed therefrom. Purchaser shall not commit, or suffer any other person to commit, any waste or damage to said premises or the appurtenances and shall keep the premises and all improvements in as good condition as they are now.

### 6.
### POSSESSION OF PROPERTY

Purchaser shall take possession of the property and all improvements thereon upon execution of this contract and shall continue in the peaceful enjoyment of the property so long as all payments due under the terms of this contract are timely made. Purchaser agrees to keep the property in a good state of repair and in the event of termination of this contract, Purchaser agrees to return the property to Seller in substantially the same condition as it now exists, ordinary wear and tear excepted. Seller reserves the right to inspect the property at any time with notice to Purchaser.

# 7.
## TAXES, INSURANCE AND ASSESSMENTS

**Taxes and Assessments:** During the term of this contract, Purchaser shall pay all taxes and assessments levied against the property.

**Liability and Hazard Insurance:** Liability insurance shall be maintained by Purchaser during the term of this contract.

**Fire, Hazard and Windstorm insurance:** Fire, hazard and windstorm insurance shall be maintained by Purchaser.

Should the Purchaser fail to pay any tax or assessment, or installment thereof, when due, or keep said buildings insured, Seller may pay the same and have the buildings insured, and the amounts thus expended shall be a lien on said premises and may be added to the balance then unpaid, or collected by Seller, in the discretion if Seller with interest until paid at the rate of 6.25 per cent per annum.

In case of any damage as a result of which said insurance proceeds are available, the Purchaser may, within sixty (60) days of said loss or damage, give to the Seller written notice of Purchaser's election to repair or rebuild the damaged parts of the premises, in which event said insurance proceeds shall be used for such purpose. The balance of said proceeds, if any, which remain after completion of said repairing or rebuilding, or all of said insurance proceeds if the Purchaser elects not to repair or rebuild, shall be applied first toward the satisfaction of any existing defaults under the terms of this contract, and then as a prepayment upon the principal balance owing. No such prepayment shall defer the time for payment of any remaining payments required by said contract. Any surplus of said proceeds in excess of the balance owing hereon shall be paid to the Purchaser.

# 8.
## DEFAULT

If the Purchaser shall fail to perform any of the covenants or conditions contained in this contract on or before the date on which the performance is required, the Seller shall give Purchaser notice of default or performance, stating the Purchaser is allowed fourteen (14) days from the date of the Notice to cure the default or performance. In the event the default or failure of performance is not cured within the 14 day time period, then Seller shall give the Purchaser a written notice specifying the

failure to cure the default and informing the Purchaser that if the default continues for a period of an additional fifteen (15) days after service of the notice of failure to cure, that without further notice, this contract shall stand cancelled and Seller may regain possession of the property.

In the event of default and termination of the contract by Seller, Purchaser shall forfeit any and all payments made under the terms of this contract including taxes and assessments as liquidated damages which shall be Seller's sole and exclusive remedy.

## 9.
## DEED AND EVIDENCE OF TITLE

Upon total payment of the purchase price and any and all late charges, and other amounts due Seller, Seller agrees to deliver to Purchaser a Warranty Deed to the subject property, at Seller's expense, free and clear of any liens or encumbrances other than taxes and assessments for the current year.

## 10.
## NOTICES

All notices required hereunder shall be deemed to have been made when deposited in the U. S. Mail, postage prepaid, certified, return receipt requested, to the Purchaser or Seller at the addresses listed below.  All notices required hereunder may be sent to:

**Seller:**

Robert Broder

W7606 Mink Ranch Road

Shawano, WI 54166

**Purchaser:**

Midwest Properties of Shawano, LLC

PO Box 11448

Green Bay, WI 54307

and when mailed, postage prepaid, to said address, shall be binding and conclusively presumed to be served upon said parties respectively.

Contract for Deed

## 11.
## ASSIGNMENT OR SALE

Purchaser shall not sell, assign, transfer or convey any interest in the subject property or this agreement, without first securing the written consent of the Seller.

## 12.
## PREPAYMENT

Purchaser to have the right to prepay, without penalty, the whole or any part of the balance remaining unpaid on this contract at any time before the due date.

## 13.
## CONVEYANCE OR MORTGAGE BY SELLER

Seller's interest is now partially encumbered by mortgage. Purchaser shall make payments directly to the Bank, as defined in the Consent Agreement attached as **Exhibit B**. After payment in full of the mortgage, any remaining balance owing pursuant to the Land Contract will be paid directly to Seller.

The Seller not may, during the lifetime of this contract, place a mortgage or lien on the premises above described, nor renew the existing mortgage thereon. Seller may not use the property as collateral for any other loan obligation.

## 14.
## ENTIRE AGREEMENT

This Agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein. All prior or contemporaneous agreements, understandings, representations, oral or written, are merged into this Agreement.

## 15.
## AMENDMENT – WAIVERS

This Agreement shall not be modified, or amended except by an instrument in writing signed by all parties.

No delay or failure on the part of any party hereto in exercising any right, power or privilege

- 5 -

Contract for Deed

under this Agreement or under any other documents furnished in connection with or pursuant to this Agreement shall impair any such right, power or privilege or be construed as a waiver of any default or any acquiescence therein. No single or partial exercise of any such right, power or privilege shall preclude the further exercise of such right, power or privilege, or the exercise of any other right, power or privilege. No waiver shall be valid against any party hereto unless made in writing and signed by the party against whom enforcement of such waiver is sought and then only to the extent expressly specified therein.

## 16.
## SEVERABILITY

If any one or more of the provisions contained in this Agreement shall be held illegal or unenforceable by a court, no other provisions shall be affected by this holding. The parties intend that in the event one or more provisions of this agreement are declared invalid or unenforceable, the remaining provisions shall remain enforceable and this agreement shall be interpreted by a Court in favor of survival of all remaining provisions.

## 17.
## HEADINGS

Section headings contained in this Agreement are inserted for convenience of reference only, shall not be deemed to be a part of this Agreement for any purpose, and shall not in any way define or affect the meaning, construction or scope of any of the provisions hereof.

## 18.
## PRONOUNS

All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular, or plural, as the identity of the person or entity may require. As used in this agreement: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action.

## 19.

- 6 -
Contract for Deed

## JOINT AND SEVERAL LIABILITY

All Purchasers, if more than one, covenants and agrees that their obligations and liability shall be joint and several.

### 20.
## PURCHASER'S RIGHT TO REINSTATE AFTER ACCELERATION

If Purchaser defaults and the loan is accelerated, then Purchaser shall have the right of reinstatement as allowed under the laws of the State of Wisconsin, provided that Purchaser pays Lender all sums which then would be due under this agreement as if no acceleration had occurred. Upon reinstatement by Purchaser, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.

### 21.
## HEIRS AND ASSIGNS

This contract shall be binding upon and to the benefit of the heirs, administrators, executors, and assigns of the parties hereto.  However, nothing herein shall authorize a transfer in violation of paragraph (11).

WITNESS THE SIGNATURES of the Parties this the ___30th___ day of ___July_____,
2004.

**SELLER:**

Robert J. Broder
Shannon I. Broder

**PURCHASER:**

Midwest Properties of Shawano, LLC

- 7 -
Contract for Deed

STATE OF WISCONSIN

COUNTY OF SHAWANO

    The foregoing instrument was acknowledged before me on
July 30, 2004 _____ (date), by Robert J. Broder and Shannon L. Broder (name(s) of person(s)).

_____
Notary Public

(Seal, if any)                                         Printed Name: Scott M. Glysch

My Commission expires: 2-12-2006

STATE OF WISCONSIN

COUNTY OF SHAWANO

    The foregoing instrument was acknowledged before me on
_____ (date), by _____ (name(s) of person(s)).

_____
Notary Public

(Seal, if any)                                         Printed Name: _____

My Commission expires:
_____

| Seller(s) Name and Address | Buyer(s) Name and Address |
|---|---|
| Name: Robert and Shannon Broder | Name: Midwest Properties of Shawano, LLC |
| Address: W7606 Mink Ranch Lane | Address: PO Box 11448 |
| City: Shawano | City: Green Bay |
| State: WI          Zip: 54166 | State: WI          Zip: 54307 |
| Phone: 715-526-6087 | Phone: 715-526-5400 |

- 8 -

Contract for Deed

# EXHIBIT C

# CONSENT AND
## AGREEMENT REGARDING RELEASE
### OF SENIOR MORTGAGES

THIS CONSENT AND AGREEMENT REGARDING RELEASE OF SENIOR MORTGAGES is entered into this __30th__ day of __July__ 2004 (the "Agreement"), by and among Robert and Shannon Broder, husband and wife (together, "Vendor"); Midwest Properties of Shawano, LLC ("Purchaser"); and Business Lending Group, a credit union service organization("Bank").

WHEREAS, Vendor intends to convey to Purchaser that certain real property legally described in attached **Annex A** (the "Real Property") pursuant to the Land Contract dated __July 30__, 2004 (the "Land Contract") attached as **Annex B**, and Purchaser requires, as a condition of entering into the Land Contract, that Vendor covenant and agree to convey the Real Property Purchaser without liens and encumbrances;

WHEREAS, Vendor has secured certain existing indebtedness to the Bank (collectively the "Original Debt") with mortgage liens against the Real Property (collectively the "Mortgages"), which Mortgages the Bank requires remain in place until it has been paid in full;

WHEREAS, Purchaser desires that Purchaser make its payment due to Vendor under the Land Contracts directly to Bank for the benefit of Vendor, as payment to Bank under the Mortgages; and

WHEREAS, the Bank has agreed to consent to the transaction contemplated in the Land Contract, described in and made part of the Land Contract, subject to the terms, conditions and covenants hereinafter set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    **Payments under Land Contract.** Throughout the term of the Land Contract (as the same may be amended from time to time) Purchaser shall make monthly payments of $5,000.00 due as and when required under the Land Contracts (the "Monthly Installments") directly to Bank at the following address: Fox Communities Credit Union, 3401 East Calumet Street, Appleton, Wisconsin 549151, Account # 300286-400. After the Mortgage has been paid in full, any remaining amounts outstanding on the Land Contract will be paid directly to Seller.

2.    **Application of Payments.** The Monthly Installments received by Bank from Purchaser hereunder shall be applied to reduce the Original Debt then due and owing by Vendor to the Bank and secured by the Mortgages as agreed by and between Bank and Vendor, as reflected on attached **Annex C**;

3.    **Credit to Land Contact; Release of Mortgages.** Any and all payments made by Purchaser to the Bank under the Land Contract shall constitute payments made on the Mortgage. The Bank hereby expressly covenants and agrees to terminate any lien or encumbrance secured by the Real Property, including without limitation the Original Debt and the Mortgage securing same (or any other interest of the Bank in the Real Estate), if and when the Bank has actually received from Purchaser those installment payments expressly required by the Mortgage. The Bank will issue a satisfaction of Mortgage provided no amounts remain outstanding with respect to account #300286-400. Within not more than 30 days following the Bank's receipt of final payment on the Mortgage the Bank promptly shall execute and deliver such certificates, instruments, releases or other agreements as are reasonably required by Purchaser release the lien on the Property. Any amounts remaining outstanding on the Land Contract will be paid directly to Seller.

4.    **Default.** Any party to this Agreement shall provide immediately to the others written notice of any default in the Monthly Installments, or other amounts to be made and/or disbursed by Vendor, Purchaser or Bank hereunder. Each party shall have a period of ten (10) calendar days to cure any such default. Such written notice of default shall be sent via registered mail to:

| | |
|---|---|
| *To Bank:* | *Business Lending Group*<br>*442 North Westhill Boulevard*<br>*Suite 100*<br>*Appleton, WI 54914-5715*<br>*Attn.: Mr. Steve Kools* |
| *To Purchaser:* | *Midwest Properties of Shawano, LLC*<br>*Attn.: Ms. Naomi Isaacson*<br>*P.O. Box 11448*<br>*Green Bay, WI 54307* |
| *With a required copy to:* | *Timothy McCoy*<br>*Godfrey & Kahn, S.C. – Green Bay*<br>*333 Main Street*<br>*P.O. Box 13067*<br>*Green Bay, WI 54301-3067*<br>*Tel.: 920/432-9300*<br>*Fax.: 920/436-7988*<br>*Email: tmccoy@gklaw.com* |
| *To Vendor:* | *Robert and Shannon Broder*<br>*Attn: Mr. Robert Broder*<br>*W7606 Mink Ranch Lane*<br>*Shawano, WI 54166* |

5.    **Consent by Bank.** The Bank hereby consents and agrees to the terms and conditions of the Land Contract, and agrees that the conveyance of the Real Estate to Purchaser shall not constitute a default in, or acceleration of any remedy under the Mortgages or under any other agreement, covenant, term, condition or commitment between the Bank and Vendor.

6.    **Miscellaneous.** The individuals executing this Agreement on behalf of each party has all requisite power and authority to enter into, legally bind, and cause such party to perform its obligations under this Agreement; and all action necessary to authorize the execution and delivery of this Agreement by each party have been duly taken prior to or contemporaneously with the execution of this Agreement. This Agreement is being made, entered into, and is intended to be construed according to the laws of the State of Wisconsin. It shall inure to and be binding upon the parties hereto and their respective successors and permitted assigns. The terms of this Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by the undersigned parties. The relationship of the parties is solely that of independent contractors, and neither party shall have any right, power or authority to bind the other party to any agreement or obligation, or otherwise act on behalf of the other. The undersigned parties do not intend this Agreement to benefit third parties; and third party beneficiaries are hereby expressly disclaimed. This Agreement shall, to the greatest extent reasonably possible, be read together and harmonized with the other documents and agreements incorporated herein by reference; provided, however, that in the event of a direct conflict between their terms and conditions, respectively, the Land Contract shall be given controlling effect. This Agreement may not be assigned without the advance written consent of each undersigned party. The provisions of this Agreement regarding insurance, indemnification, and intellectual property rights shall survive expiration or termination of the Agreement. This Agreement and any of the related exhibits may be executed

2

in counterparts, each of which when so executed shall be deemed to be an original, and all such counterparts shall together constitute one and the same instrument. Delivery by facsimile of a signed document shall constitute delivery of a binding original and all parties may rely on the validity of the copy received.

IN WITNESS WHEREOF, the parties have caused their names to be subscribed as of the day, month and year first written above.

"BANK":
BUSINESS LENDING GROUP

By: _____
Its: _____
Date: _____

"VENDOR":

_____
Robert Broder, individually

_____
Shannon Broder, individually

"PURCHASER":
MIDWEST PROPERTIES OF SHAWANO, LLC

By: _____
Its: _____
Date: _____

3

## ANNEX A
## REAL ESTATE

*(To be attached)*

**ANNEX C**
**SCHEDULE OF APPLICATION**
**OF LAND CONTRACT**
**PAYMENTS TO MORTGAGES**

*(To be attached)*

6